719 P.2d 402

**In re SWAN FALLS LAND AND CATTLE CO., INC., an Idaho corporation, For Dissolution.**

**Rachel GILLINGHAM, Petitioner-Respondent,**

v.

**SWAN FALLS LAND AND CATTLE CO., INC., an Idaho corporation, and Victoria H. Smith, Respondents-Appellants.**

No. 16012.

Supreme Court of Idaho.

April 23, 1986.

Vernon K. Smith, Boise for respondents-appellants.

Stanley W. Welsh, and Joseph M. Meier, of Clemons, Cosho & Humphrey, P.A., Boise, for petitioner-respondent.

DONALDSON, Chief Justice.

The Swan Falls Land & Cattle Company was formed by H.B. Gillingham and Vernon K. Smith in 1963. The main asset of the corporation is a 2,400 acre parcel of undeveloped desert land. Following the deaths of H.B. Gillingham and Vernon K. Smith, their wives, Rachael Gillingham and Victoria Smith, each inherited a one-half interest in the corporation. Between 1970 and 1980, the land was leased for grazing to ranchers who had cattle operations in the surrounding area.

In 1980, Rachael Gillingham filed a petition for liquidation of the corporation which was granted by the district court on August 21, 1981. The Court of Appeals affirmed the order based on I.C. § 30–1–97(a)(1) since the directors of the corporation were deadlocked in the management of the corporate affairs and the shareholders were unable to break the deadlock and irreparable injury to the corporation was thereby threatened. *Gillingham v. Swan Falls Land & Cattle Co.*, 106 Idaho 859, 683 P.2d 895 (Ct.App.1984).

On March 11, 1985, Charles Gillingham, one of the receivers appointed by the district court, moved for an order approving the sale of the land to a buyer who had made an offer to purchase the land for $134,400 ($42,400 at closing with the remainder amortized over 10 years). Smith objected to the sale, asserting that she wanted to retain her one-half interest in the land to lease for grazing. She objected to the fact that under the sale agreement the parties would still have to continue to deal with each other as sellers under an executory contract for 10 years. If the buyer were to default, Smith and Gillingham

would become tenants-in-common. She also objected to the tax liability she would be subject to as a shareholder if the land were sold. On the same day, Smith filed a petition with the district court to equitably partition the land so Gillingham could sell half, and she could retain her half.

During a recess at the hearing on April 2, 1985, the parties spoke with the prospective buyer who made a cash offer to buy the land outright at approximately $126,-400. Smith objected to the offer and when the court reconvened it ordered the approval of the sale. The court made the following remarks:

"It has been my desire throughout these proceedings from the entry of the order, or entry of the findings of fact and conclusions of law on May 29th, 1981 that the interested parties could come to an agreement and a resolution of this acceptable to each. Time was allowed for that. It was encouraged. I know myself that at various times it seemed eminently logical and frankly quite easy to achieve. However, that was not to pass. Even as late as today I have recessed these proceedings to allow further time to discuss and see if a reasonable resolution couldn't be reached. It appears that that cannot take place. That the deadlock, not only in management of the corporation but the deadlock in liquidation of the assets, continues.

"I have two thoughts at this time. One is to allow some additional time to see if an agreement can't be reached. The other is to simply proceed to decision on all the matters pending. I would allow additional time if I thought it were fruitful. Frankly, the proposal that was last made by the proposed purchaser seemed to me to be a very good proposal. One which would have given additional consideration. That has been rejected from consideration by the Smith's interest in this case. They have requested that I consider the matter solely upon the record presently before me. And the bid that has been made. At this point I think there is no purpose in further delay. For some reason there is a chemis-try that precludes resolution of this matter, short of a sale. Frankly it seems to even preclude resolution within the context of sale on terms [that] might be more appealing than other terms.

"Based upon the record before me, based upon the prior orders that I have entered. Based upon the Appellate decision that's been entered, it appears that the time has come to conclude this matter. And I'm going to enter the order approving the sale as proposed."

Smith now appeals the district court's order.

The issue presented in this appeal, therefore, is whether the district court abused its discretion when it approved the sale of the land upon liquidation of the corporation rather than equitably partitioning the land between the two shareholders. We hold that it did not and affirm the district court's order.

■ Under I.C. § 30–1–98, the receiver is authorized to sell any or all corporate assets upon liquidation of the corporation and the district court can, in its discretion, approve or disapprove the sale. That discretion should be exercised in light of relevant factors which are reflected in the circumstances of the case and the relevant interests which are to be served. *Gillingham, supra* at 862, 683 P.2d at 898. Similar to its discretion in considering whether to dissolve a corporation, the most relevant factor the district court should consider in approving a sale of corporate assets is the best interests of the shareholders. *Id.* I.C. § 30–1–98 does not specify that the district court must favor a partition of the assets over a sale when those assets are parcels of land. The relevant portion of the statute reads:

"**30–1–98. Procedure in liquidation of corporation by court.**—In proceedings to liquidate the assets and business of a corporation the court shall have power to issue injunctions, to appoint a receiver or receivers pendente lite, with such powers and duties as the court, from time to time may direct, and to take

such other proceedings as may be requisite to preserve the corporate assets wherever situated, and carry on the business of the corporation until a full hearing can be had.

"After a hearing had upon such notice as the court may direct to be given to all parties to the proceedings and to any other parties in interest designated by the court, the court may appoint a liquidating receiver or receivers with authority to collect the assets of the corporation, including all amounts owing to the corporation by subscribers on account of any unpaid portion of the consideration for the issuance of shares. Such liquidating receiver or receivers shall have authority, subject to the order of the court, to sell, convey and dispose of all or any part of the assets of the corporation wherever situated, either at public or private sale. The assets of the corporation or the proceeds resulting from a sale, conveyance or other disposition thereof shall be applied to the expenses of such liquidation and to the payment of the liabilities and obligations of the corporation, and any remaining assets or proceeds shall be distributed among its shareholders according to their respective rights and interests. The order appointing such liquidating receiver or receivers shall state their powers and duties. Such powers and duties may be increased or diminished at any time during the proceedings."

In the instant case, the district court had before it the receiver's motion to approve the sale. A hearing was held on the motion and the shareholders were present and argued the merits of selling the land for the consideration offered by a ready, willing and able buyer. When the appellant objected to the long-term nature of the offer, the buyer revised it to meet the appellant's objections. The receiver presented evidence that the value of the land was approximately $120,000.00. The appellant presented no evidence to rebut this valuation, and there is no evidence in the record to indicate that the amount of the offer was unreasonably low or that the proposed transaction was not arms-length.

The court was not required to partition the property instead of ordering its sale. The statute gives the court the option, and the option that was squarely presented to the court in the form of a specific offer was a sale. The district court noted that the parties had ample time to reach an agreement following the decision of the Court of Appeals affirming the liquidation. Yet, no agreement to partition, sell or otherwise dispose of the assets of the corporation had ever been reached. The record supports the district court's concern that further delay of the liquidation process would not be in the best interests of the shareholders. Therefore, we hold the district court did not abuse its discretion in determining that a sale of the corporate assets to a ready, willing and able buyer was in the best interests of the shareholders. We affirm the district court's order.

Costs to respondents.

No attorney fees on appeal.

BAKES, BISTLINE and HUNTLEY, JJ., and McFADDEN, J. Pro Tem., concur.

BISTLINE, Justice, specially concurring.

The "corporation" in essence consists of two widowed ladies, Mrs. Gillingham and Mrs. Smith. Their equal ownership is undisputed, and because it is equal, there is no ready solution for breaking their continued deadlock.

Conceivably, from the widow Smith's point of view, she has been forced to sell at a time, at a price, and in a manner which is not to her best interest. Probably, considered tax-wise, she is more injured by the cash sale than she would have been by a time sale, and without doubt does not want to sell at all.

On the other hand, the widow Gillingham may have a pressing need for the money, but if not, perhaps simply wants to be free and clear of the joint ownership of the land. In many ways the situation is no different from the run-of-the-mill divorce action where real property is part of the marital

_estate. The concerns of *both* parties must be taken into consideration.

If Mrs. Smith was offered the opportunity to become sole owner by becoming the purchaser of the property, either on the same terms, or for cash, then, on that basis only, am I voting to affirm.